UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SONNY RAY MARTIN,

    Plaintiff,

v.                                                  Case No.: 8:06-CV-234-T-24TBM

JLG INDUSTRIES, INC., ET AL.,

    Defendants.
_____/

**ORDER**

This cause comes before the Court on four motions: (1) Defendant JLG Industries, Inc.'s ("JLG") Motion for Summary Judgment (Doc. No. 53), which Plaintiff opposes (Doc. No. 64); (2) Defendant Rental Service Corporation, U.S.A., Inc.'s ("RSC") Motion for Summary Judgment (Doc. No. 51), which Plaintiff opposes (Doc. No. 65); (3) Defendants' Motion for Leave to File Supplemental Memorandum (Doc. No. 66), which Plaintiff opposes (Doc. No. 67); and (4) Defendant RSC's Motion to Strike the Affidavit of Johnny Dennison (Doc. No. 68), which Plaintiff opposes (Doc. No. 69). Accordingly, the Court will address each motion.[1]

**I. Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no

---

[1]The Court finds that a supplemental memorandum from Defendants regarding their motions for summary judgment is not necessary, and as such, the Court denies that motion.

genuine issues of material fact that should be decided at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim.  See id.  When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial.  Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion.  See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988).  A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**II.  Background**

This case involves product liability claims that resulted from Plaintiff Sonny Ray

Martin's use of a scissor lift that was manufactured by JLG and leased to Plaintiff's employer, Specified Architectural Systems, Inc. ("Specified"), by RSC.  Plaintiff contends that the scissor lift was defective due to the scissor lift having a chain that hung slack at mid-level of the entryway to the lift basket (rather than a self-closing gate that had a solid bar in place of the chain), due to it not having a toe board at the entryway, and due to a lack of adequate warnings regarding the dangers of using the lift.[2]

Specified was a contractor installing skylights in the roof of a building at Bishop Nevins Academy. (Martin depo[3], p. 33).  Plaintiff was using the scissor lift as a hoist to lift the skylights up to workers on the structural roof of the building.  (Martin depo, p. 97-98). The sections of the skylight were placed on top of the lift basket's top side rails and extended beyond the lift basket.  (Martin depo, p. 103-106).  The skylights panels, which weighed between fifty and one hundred pounds, were held in place by hand by Martin and a co-worker.  (Martin depo, p. 128-130).

At the time of the incident, the lift was at roof height, and Plaintiff turned around and squatted down backwards underneath the skylight panel, holding the panel with his hands.  (Martin depo, p. 130-133).  Plaintiff intended to slide the panel forward to his co-worker, but when he went to put his right hand on the back of the panel and slide the panel forward, his right foot slipped off of the scissor lift when he stepped back to get better balance.  (Martin depo, p. 134-139).  At that point, Plaintiff fell backwards over the chain that went across the entryway of the lift basket, falling twenty-five feet to the ground.  (Martin depo, p. 140-143).

Plaintiff has asserted four claims in this case.  He asserts a strict liability and negligence

---

[2]Pictures attached to Plaintiff's deposition show the lift from various angles.

[3]Doc. No. 56

3

claim against JLG and RSC, alleging that the scissor lift was defective due to its design and lack of adequate warnings. He also alleges that Defendants were negligent for failing to advise him of the need for fall protection equipment, failing to adequately inspect and maintain the lift, and failing to train him on the proper use of the lift. Both defendants have filed motions for summary judgment on all claims.

### III.  JLG's Motion for Summary Judgment

In its motion, JLG argues that it should be granted summary judgment on the strict liability and negligence claims asserted by Plaintiff. Specifically, JLG argues: (1) Plaintiff's misuse of the scissor lift bars his claims, and (2) JLG did not have a duty to warn Plaintiff of an obvious danger. Accordingly, the Court will address each argument.

#### A.  Product Misuse

JLG argues that Plaintiff's misuse of the scissor lift bars his design defect claims. Specifically, JLG is referring to the fact that Plaintiff was using the lift as a crane, which is not the intended use of the lift. JLG contends that Plaintiff fell off the lift because he was squatting beneath the skylight panel (an object that the lift was not designed to transport) and fell backwards while trying to push the panel forward.

The Operators & Safety Manual for the lift provides the following: (1) "Do not use the machine for any purpose other than positioning personnel, their tools, and equipment." (2) "Do not carry materials directly on platform railing unless approved by JLG." (3) "Never attempt to use the machine as a crane." (4) "The Scissor Lift's intended purpose is to position personnel with their tools and supplies at positions above ground level." (5) "The JLG Scissor Lift is not intended to be used to lift materials other than supplies which personnel in the platform require

4

to do their job. Supplies or tools which extend outside the platform are prohibited. It must not be used as a forklift, crane, . . . or to push or pull another object." (Doc. No. 53, p. 1-2, 1-4, 4-1).

"A manufacturer is not strictly liable for all injuries caused by its product, however it is used. On the contrary, a manufacturer is liable only when the product is used as intended." Jennings v. BIC Corp., 181 F.3d 1250, 1256 (11th Cir. 1999)(citing High v. Westinghouse Electric Corp., 610 So. 2d 1259, 1262 (Fla. 1993)). Since the evidence in this case shows that Plaintiff was not using the product as intended, the Court agrees that Plaintiff's misuse of the lift bars his strict liability defective design claim. See High, 610 So. 2d at 1262 (Fla. 1993)(stating that "[i]n order for strict liability to apply to the manufacturer, [the product] . . . must have been used for the purpose intended"); Jennings, 181 F.3d at 1256 (stating that "a manufacturer is [strictly] liable only when the product is used as intended" and noting that the Florida Supreme Court in High did not adopt the dissenting view that "intended use" of a product includes unintended uses if they were reasonably foreseeable by the manufacturer); Veliz v. Rental Service Corp. USA, Inc., 313 F. Supp.2d 1317, 1326-27 (M.D. Fla. 2003); Liberty Mutual Fire Ins. v. A.O. Smith Corp., 2006 WL 897616 (N.D. Fla. March 31, 2006). Accordingly, the Court grants summary judgment on Plaintiff's strict liability design defect claim.

However, with respect to Plaintiff's negligent design claim, the Court finds that summary judgment is not appropriate. Even though JLG is not strictly liable for the alleged design defect, it could still be liable if a jury finds that JLG negligently designed the lift by having a chain that hung slack at mid-level of the entryway to the lift basket (rather than a self-closing gate that had a solid bar in place of the chain) and/or due to the lift not having a toe board at the entryway and that JLG's negligence was a proximate cause of Plaintiff's injuries. Jennings, 181 F.3d at 1257.

A product can be found to be defectively designed if Plaintiff shows that the risk of danger in the design outweighs its benefits and that the design of the product proximately caused Plaintiff's injuries. See Tran v. Toyota Motor Corp., 420 F.3d 1310, 1313 (11th Cir. 2005)(recognizing the risk-utility test); Force v. Ford Motor Co., 879 So. 2d 103, 105-106 (Fla. 5th DCA 2004).

With respect to JLG's argument that Plaintiff's misuse of the lift bars his negligent design claim, the Court rejects this argument. Instead, Plaintiff's misuse of the lift merges into the defense of comparative negligence and reduces Plaintiff's recovery on the negligent design claim in proportion to his comparative fault. See Standard Havens Products, Inc. v. Benitez, 648 So. 2d 1192, 1197 (Fla. 1995).

Furthermore, to the extent that JLG argues that it is entitled to summary judgment, because the sole proximate cause of Plaintiff's injuries was his misuse of the lift, the Court rejects this argument. "The issue of proximate cause is generally one of fact which should be determined by a jury. In determining whether the action of the defendant is a proximate cause of the injury, the test is to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." Stazenski v. Tennant Co., 617 So. 2d 344, 346 (Fla. 1st DCA 1993)(citations omitted). Furthermore, "there may be more than one proximate cause of an injury." As such, it is for the jury to determine whether Plaintiff's misuse of the lift was the sole proximate cause of his injuries. Accordingly, the Court denies summary judgment on Plaintiff's negligent design claim.

**B. Warnings**

Next, JLG argues that it should be granted summary judgment on both of Plaintiff's inadequate warning claims (strict liability and negligence), because it did not have a duty to

warn Plaintiff of the obvious danger that the lift posed.  JLG is correct that there is no duty to warn of an obvious danger.  See Rodriguez v. New Holland North America, Inc., 767 So. 2d 543, 544-45 (Fla 3d DCA 2000)(citations omitted).  In determining whether a danger is open and obvious, courts apply an objective, reasonable person standard.  Byrnes v. Honda Motor Co., Ltd, 887 F. Supp. 279, 281 (S.D. Fla. 1994)(citation omitted).

      The Court agrees that JLG did not have a duty to warn that a person could fall out of the entryway of the lift basket, because such danger was open and obvious.[4]  See Rodriguez, 767 So. 2d at 545 (finding no duty to warn of the danger of coming into contact with a loader's boom, because such danger was open and obvious); Siemens Energy & Automation, Inc. v. Medina, 719 So. 2d 312, 315 (Fla. 3d DCA 1998)(finding no duty to warn of the obvious danger of standing on top of a nine-foot high piece of equipment that was not designed to be used as a work platform and then falling off); Cohen v. General Motors Corp., Cadillac Division, 427 So. 2d 389, 391 (Fla. 4th DCA 1983)(finding no duty to warn of the obvious result of manually releasing an emergency brake while the car is running and in gear–that such action would cause the car to move in accordance with the gear); Marzullo v. Crossman Corp., 289 F. Supp.2d 1337, 1346 (M.D. Fla. 2003)(finding that the risk that one could suffer serious injury or death as a result of carelessly using a BB gun was obvious); Byrnes, 887 F. Supp. at 281 (finding that the dangers posed to a motorcycle operator's lower extremities in the event of a collision are open and obvious).  Accordingly, the Court grants summary judgment on Plaintiff's inadequate

---

[4]The pictures of the lift attached to Plaintiff's deposition show that the mid-section of the entryway to the lift basket had a chain (rather than the entryway having a gate with a solid bar in the middle) and that the lift did not having a toe board at the entryway.  Any reasonable person looking at the lift basket could tell that there was a danger that one could fall off of the lift due to the entryway not having a solid bar around the middle and not having a toe board.

warning claims.[5]

## IV.  RSC's Motion for Summary Judgment

RSC also moves for summary judgment on Plaintiff's claims.  In support of its motion, RSC argues: (1) worker's compensation immunity bars Plaintiff's claims; (2) Plaintiff's misuse of the lift bars his strict liability claims; (3) RSC did not have a duty to train operators of the lift; (4) RSC did not have a duty to advise its lessee of JLG's recommendation of wearing fall protection while using the lift; (5) there is no evidence that RSC improperly maintained or inspected the lift; and (6) Plaintiff cannot show that RSC's marketing of the lift was one of the proximate causes of his fall.  Accordingly, the Court will address each argument.

### A.  Worker's Compensation Immunity

RSC argues that since Plaintiff received worker's compensation benefits[6], worker's compensation immunity bars Plaintiff's claims.  In support of this argument, RSC points out the general rule when worker's compensation is involved:

> [A] worker injured by a leased dangerous instrumentality operated by a fellow worker is limited to no more recovery than that permitted by the worker's compensation statutes.  The . . . [reason for this] is that leased equipment used on a job site in effect has become the working tool of the employer.  Thus, the exclusivity principle of worker's compensation comes to bear.

---

[5]Plaintiff also appears to argue that JLG was negligent because it had a duty to give proper safety familiarization with the lift by informing and providing him and his employer with fall protection. (Doc. No. 64, p. 2).  Plaintiff, however, has not pointed to any evidence that JLG owed such a duty to him or his employer, since the lift was sold to RSC, not Plaintiff's employer.  Furthermore, the Court notes that the Operators & Safety Manual provides: "JLG Industries, Inc. recommends that all persons in the platform wear a full body harness with a lanyard attached to an authorized lanyard anchorage point while operating this machine." (Doc. No. 53, p. 1-2).  As such, to the extent that Plaintiff is asserting a negligence claim against JLG for lack of familiarization, JLG is granted summary judgment on such claim.

[6]Doc. No. 52, Ex. M, question # 24

8

Halifax Paving, Inc. v. Scott & Jobalia Construction Co., Inc., 565 So.2d 1346, 1347 (Fla. 1990)(citing Smith v. Ryder Truck Rentals, Inc., 182 So. 2d 422 (Fla. 1966))(internal citations omitted).  However, there is an exception to this general rule for situations where the lessor was actively negligent.  See Litton v. Saf-T-Green of Orlando, Inc., 608 So. 2d 908, 910-11 (Fla. 5th DCA 1992).  Active negligence by a lessor means that the lessor did something that contributed to the plaintiff's injury, such as failing to properly maintain the leased item.  See id. at 911.

     Plaintiff has alleged that RSC failed to properly inspect and maintain the lift by failing to ensure that the lift was safe and reliable to use.  Specifically, Plaintiff argues that the chain was hanging lower than it should have been hanging.  Additionally, Plaintiff argues that RSC (1) failed to inform Plaintiff or his employer that the use of fall protection was recommended by JLG, (2) failed to ensure that the lift rented by Specified was appropriate for the purpose Specified intended to use it for, (3) failed to ensure that all labels were attached to the lift and were legible, (4) failed to include the Operators & Safety Manual with the lift, and (5) failed to offer to sell or rent fall protection.  Plaintiff argues that these duties arose under the American National Standard Institute's ("ANSI") standards; specifically, A92.6-1999.[7]

     RSC has argued that Plaintiff's employer, Specified, breached its duties to Plaintiff under ANSI A92.6-1999 and 29 C.F.R. § 1926.454(a), including the duty to train its employees on the proper use of the lift and to read the Operators & Safety Manual to ensure that the recommended precautions are taken.  While this may be true, such does not negate the fact that ANSI A92.6-1999 also imposes certain duties on RSC.  It is for the jury to determine whether RSC breached any of the duties imposed by ANSI, and if so, whether the breach was a proximate cause of

---

[7]ANSI sets the industry standards in the United States for the construction industry.

9

Plaintiff's injuries. Accordingly, the Court denies summary judgment on the issue of worker's compensation immunity.

### B. Product Misuse

Next, RSC argues that Plaintiff's misuse of the lift bars his strict liability claims. The Court agrees. As previously explained, Plaintiff's misuse of the lift bars his strict liability claims. Accordingly, the Court grants summary judgment on Plaintiff's strict liability claims against RSC.

### C. Marketing of the Lift

Next, RSC argues that Plaintiff cannot show that RSC's marketing of the lift was one of the proximate causes of his fall. Plaintiff has not responded to this argument, and as such, the Court deems this claim to be abandoned. Accordingly, the Court grants summary judgment on this claim.

### V. Motion to Strike Affidavit

RSC argues that the affidavit of Johnny Dennison (Doc. No. 72) that Plaintiff filed should be stricken, because it is not based on personal knowledge, it is conclusory, and it contained expert opinions that he is not qualified to give. The Court finds that it is unnecessary to rule on this motion, because the only allegations in the affidavit that the Court considered were not at issue in the motion to strike.

Specifically, the Court only considered the following four allegations: The Court considered paragraphs 8 and 9 to the extent that Dennison states that no one from JLG or RSC offered him any familiarization training or explained to him that JLG recommended the use of personal fall protection while operating the lift. Additionally, the Court considered paragraphs

10 and 13, in which he states that he was the operator of the lift, he did not remember seeing an operations manual with the lift, and the chain on the lift was lower than the mid-rail around the rest of the lift. Therefore, the Court denies this motion as moot.

## VI. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) JLG's Motion for Summary Judgment (Doc. No. 53) is **GRANTED IN PART AND DENIED IN PART**: The motion is **DENIED** to the extent that Plaintiff asserts a negligent design claim against JLG; otherwise, the motion is **GRANTED**.

(2) RSC's Motion for Summary Judgment (Doc. No. 51) is **GRANTED IN PART AND DENIED IN PART**: The motion is **DENIED** to the extent that Plaintiff asserts a negligence claim against RSC for failing to properly inspect and maintain the chain and for breaching its duties under ANSI; otherwise, the motion is **GRANTED**.

(3) Defendants' Motion for Leave to File Supplemental Memorandum (Doc. No. 66) is **DENIED**.

(4) RSC's Motion to Strike the Affidavit of Johnny Dennison (Doc. No. 68) is **DENIED AS MOOT**.

**DONE AND ORDERED** at Tampa, Florida, this 10th day of August, 2007.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

11